Eastway Realty Corporation v. Commissioner. Louis Ellman and Sadie Ellman v. Commissioner. Louis Ellman v. Commissioner.
Eastway Realty Corp. v. Commissioner
Docket Nos. 84928, 93897, 93898.
United States Tax Court
T.C. Memo 1962-217; 1962 Tax Ct. Memo LEXIS 91; 21 T.C.M. (CCH) 1156; T.C.M. (RIA) 62217; September 14, 1962
Julius E. Bagley, Esq., 50 Court St., Brooklyn, N. Y., for the petitioners. Howard B. Sweig, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax and additions thereto as follows: Eastway Realty
Additions
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
1950
$2,847.68
$1,423.84
1951
4,037.00
2,018.50
$201.85
1952
3,589.19
1,794.60
1953
2,398.91
1,199.46
Ellman
Sec. 294(d)(2)
1950
$1,063.83
$ 60.23
$ 531.92
1951
2,466.61
1,302.81
$121.68
1952
3,903.61
Sec. 294(d)(1)(A)
1,951.81
1953
1,258.66
$126.87
629.33
A number of issues were raised by the pleadings. Some were *92 not pressed by the petitioners. A stipulation disposed of others. Those which the parties argue in their briefs, the only ones requiring discussion and decision are: (a) Is any part of each or any deficiency against Eastway or Ellman due to fraud with intent to avoid tax? (b) Did Eastway receive rent from Deutsch for the apartment occupied by him? Findings of Fact Eastway Realty Corporation, herein called Eastway, is a New York corporation organized in 1940 to own and operate real estate. Its returns for the tax years were filed with the district director of internal revenue at Brooklyn, N. Y. Its books and records were kept on a cash basis and the returns were prepared on that basis. The capital stock of Eastway consisted of 100 shares of which Louis Ellman and Max Deutsch each owned 50 shares. Deutsch, a practicing dentist, was married in 1936 or 1937 to Leah Ellman, Louis' daughter. Louis was president and the principal officer of Eastway. Deutsch also was an officer of Eastway. Eastway acquired a six-floor brick building in 1940 at a cost of $327,032.40. It had been built in 1922 and contained 77 apartments. Eastway operated that building during the tax years. Eastway *93 received rents from non-stockholder tenants as follows: 1950
1951
1952
1953
Gross Rent
$54,196.75
$54,310.05
$56,352.60
$60,548.91
Less Paint Allowances
1,000.00
1,000.00
1,000.00
1,000.00
$53,196.75
$53,310.05
$55,352.60
$59,548.91
Its total expenses for those years were $45,669.93 for 1950, $47,819.22 for 1951, $51,509.30 for 1952, and $56,067.22 for 1953. The total rents and net income or loss reported by Eastway on its original returns were as follows: Net Income
Year
Rents
or Loss
1950
$48,739.54
$1,495.61
1951
44,192.31
1,782.05
1952
48,091.92
(3,008.51)
1953
55,708.94
1,398.13
Each of those returns was prepared by an accountant from information furnished by Louis, and Louis signed each return. Louis did not disclose to the accountant preparing the return, the full amount of the rentals received from non-stockholder tenants in any of the years 1950, 1951, 1952 or 1953. He took steps in each year to conceal the receipt of some of those rentals and not all were deposited in Eastway's bank account. Eastway filed amended returns on July 21, 1958, for the four tax years reporting rents and *94 net income as follows: Year
Rents
Net Income
1950
$55,720.77
$4,999.50
1951
53,834.05
4,165.30
1952
58,009.10
2,965.32
1953
61,727.91
1,908.85
Representatives of Eastway knew that a special agent investigation had been begun long before those amended returns were filed. The notice of deficiencies was mailed on October 28, 1959. A part of the deficiency for each of the years 1950, 1951, 1952, and 1953 in the case of Eastway is due to fraud with intent to avoid tax. Louis and Sadie Ellman are husband and wife. Louis filed separate returns for 1950, 1951, and 1952 and he and Sadie filed a joint return for 1953. All returns were filed with the district director of internal revenue, Brooklyn, N. Y.
Louis was born about 1884 in Ukraine, Russia, where he received "a Jewish education." He came to the United States in 1906 or 1907. He has engaged in the lunchroom business and the real estate business, the latter for a good many years. He kept no books or records of his own business activities. Louis opened a bank account, on March 2, 1938, and made all deposits in and withdrawals from it. It was his account, although in his daughter's maiden name. *95 He had a power of attorney from Leah to use the account. It was his only bank account. He opened the account in her maiden name, after she was married, because he wanted to avoid a possible judgment on a mortgage bond which he had signed. He sometimes deposited in the account money belonging to Eastway. The following table shows the number of checks and deposits, the total deposits and the opening balance in that account during the tax years: Number of
Total Amount
No. of
Total Amount
Opening
Deposits
of Deposits
Checks
of Checks
Balance
1950
17
$11,322.86
57
$ 4,368.26
$ 549.33
1951
6
2,285.00
28
5,984.17
7,503.95
1952
38
11,432.28
49
8,418.56
3,804.78
1953
16
11,261.06
57
14,636.13
6,818.50
1954
3,443.43
Louis' returns were prepared by accountants from information furnished by Louis. He did not inform them of his bank account. The following table shows the income reported by Louis on his returns: Source and Nature of Income
1950
1951
1952
1953
Eastway Salary
$1,500.00
$2,400.00
$ 375.00
$2,400.00
Management Fee
2,000.00
Stetson Realty Corp. Salary
500.00
1,000.00
Management Fee
1,500.00
1,500.00
Total Gross Income Reported
$2,000.00
$3,400.00
$3,875.00
$3,900.00
*96 Louis received from Eastway but did not report on his returns in 1951 a management fee of $1,500, in 1952 salary of $75, and in 1953 salary of $800. All stipulated facts are incorporated in these findings by this reference. Opinion The Commissioner has included in the Eastway rent for the apartment occupied by Max Deutsch and his wife during the entire tax period up to June 1953. Eastway assigns this as error and has the burden of proof. Max testified that he occupied the apartment rent free and Louis, in answer to one of many leading questions from his counsel about which counsel was warned repeatedly, confirmed this. However, the Commissioner relied upon a prior statement by Max. The Internal Revenue Service sent out questionnaires in April 1955 to tenants of Eastway in an effort to learn the truth about what rents Eastway had received during the tax years. One was received by Max and he answered it stating in his own handwriting, and over his signature, that he had occupied apartment C-4 from July 1948 until June 1953; he signed a lease with the owner; and he paid annual rent in cash to the owner of $924 in 1949, 1950, and 1951, $1,056 for 1952 and $579 for the period January *97 through June 1953. The Court, after listening to his testimony, including his attempt to explain his earlier written statement, has no confidence in his testimony or in Louis' answer on this point and, for failure of proof, holds that the presumption of correctness attached to the determination of the Commissioner has not been overcome. There is no controversy over the deficiencies in these cases and the statute of limitations does not bar their assessment or collection. Likewise the additions under section 291(a), 294(d)(2) and 294(d)(1)(A) are not contested. The only issues requiring further discussion and decision are whether additions to the tax under section 293(b) for fraud are supported by the evidence. The Commissioner has the burden of proof on these issues and any failure of proof on issues as to which the taxpayer had the burden cannot aid the Commissioner on the fraud issues. He can be aided, of course, by any stipulated fact which might support his burden of proof as to fraud. The stipulated facts show that gross rentals and net income of Eastway were consistently understated in its original returns. Its records were inadequate and misleading. Counsel for the petitioners *98 has tried hard to have the Court believe that Louis was so lacking in education and intelligence that he could not "read an income tax report" and did not know what his accountants had reported on the returns, all of which he signed. The existence of this defect, if any, must be more in the mind of his counsel than it is apparent to the Court, after observing Louis during the trial. He certainly was well aware that the returns did not and could not report substantial amounts of rental income for each year which he did not disclose to the ones making up the Eastway returns. He was capable in the operation of the apartment, including the borrowing of money and the collection of every cent due from non-stockholder tenants. Furthermore, he deliberately took steps to prevent the records of Eastway from showing the receipt of substantial amounts of income which he knew should be reported on its returns. The evidence as a whole, not all of which is discussed in this paragraph, fully justifies the conclusion that the Commissioner has sustained his burden of proving fraud by clear and convincing evidence for each year in the case of Eastway. The Commissioner's allegations of fraud in the *99 case of Louis are that he diverted to himself rentals of Eastway amounting to $3,981.21 in 1950, after deducting $3,000 salary or fees credited but not paid to or reported by Louis; $9,241.74 for 1951 after deducting $2,400 of salary or fees credited but not paid to or reported by Louis; $9,917.18 for 1952; and $6,018.97 for 1953. These are the only allegations pleaded and there must be clear and convincing evidence to support them if the additions for fraud in the cases of Louis are to stand. The Commissioner made certain concessions reducing the alleged diversions originally alleged as set forth above. The Commissioner has charged numerous times in the presentation of this case that Louis, Eastway and the two certified public accountants who prepared their returns were uncooperative and refused or failed to produce books and records essential to a proper computation of tax for the years 1950 through 1953. This, of course, does not help the Commissioner to sustain his burden of proof on the fraud issues and, in the cases of Louis, the evidence in the record to support the Commissioner's pleadings on fraud, is not clear and convincing to the Court to show that a part of any deficiency *100 against Louis is due to fraud with intent to evade tax. The stipulated omissions of income by Louis are not alleged to support fraud. There may be some rather strong inferences that Louis diverted rentals of Eastway into his own bank account, carried in the maiden name of his daughter, but a finding of fraud needs better support than that. Computations of revenue agents made from sources not before the Court are not reliable or convincing evidence of fraud. Some of the excerpts from Eastway's records relied on to show diversions are not legible or clear enough for the Court to understand. No doubt counsel for the Commissioner has done the best he could with a difficult assignment but he had not proved fraud in the cases of Louis. Decisions will be entered under Rule 50.